Parr v. Brady.

---

JOHN PARR v. MICHAEL BRADY.

The *bona fide* purchaser of a chattel at a mortgagee's sale, under a mortgage executed and filed in New York, according to the statutes of that state, the chattel being there, and the mortgagor also residing there at the execution of the mortgage, and the mortgage being due, is protected against a previous *bona fide* purchaser from the mortgagor, the property having been brought into this state and there sold.

---

In *trover*.    On case certified from the Hudson Circuit.

Parr v. Brady.

Argued at June Term, 1874, before BEASLEY, Chief Justice, and Justices BEDLE, WOODHULL and SCUDDER.

For the plaintiff, *Jos. F. Randolph.*

For the defendant, *J. F. McGee.*

The opinion of the court was delivered by

BEDLE, J.   The chief question for consideration is, whether the *bona fide* purchaser of a chattel at a mortgagee's sale, under a mortgage executed and filed in New York, according to the statutes of that state, the chattel being there, and the mortgagor also residing there at the execution of the mortgage, and the mortgage being due, is protected against a previous *bona fide* purchaser from the mortgagor, the property having been brought into this state, and there sold?

This question is based upon the following facts, which the jury could find from the evidence.   Parr purchased the coach in controversy at an auction sale in New York city, made on behalf of White, the mortgagee.   White held two mortgages, executed by Dillon to him, which covered the property. After one of the mortgages came due, Dillon took the coach from New York to Jersey City, and there sold it at a public vendue to Brady.   White thereupon, under pretence of hiring it, got it across the river into New York city, and there seized the possession from Brady's driver.   It was then sent by White to an auctioneer, and sold to Parr.   Some three months after that sale Brady, by a pretence similar to that practiced by White, enticed Parr's driver to Jersey City, and there re-took the coach.   Each party is to be regarded as a *bona fide* purchaser.   Parr clearly was, and Brady must also be so considered, although the evidence is not as clear as to him.   The mortgages were executed and filed in New York, according to the law of that state, and are to be treated as without fraud, and for an honest consideration.

The general rule is, that if the transfer, or disposition of personal property, is valid at the owner's domicil, where made —that it is valid everywhere.

This rule has its exceptions, when the laws of different jurisdictions are in conflict, and particularly in cases where the *situs rei*, at the time of the contract, is in another state. *Varnum* v. *Camp*, 1 *Green* 326; *Moore* v. *Bonnell*, 2 *Vroom* 90; *Runyon* v. *Groshon*, 1 *Beasley* 87; *Bently* v. *Whittemore*, 4 *C. E. Green* 462; *Frazier* v. *Fredericks*, 4 *Zab.* 162. This case is not within any of those, for the coach was in New York at the time of the execution and filing of the mortgage. The mortgagor also resided there, and the title of the mortgagee must prevail, unless to protect it, is contrary to our statutory or common law policy. If not contrary, it is our duty, by the comity of states, to give effect to the mortgage here, according to the law of the owner's domicil. The common law of this state recognizes the validity of chattel mortgages. They have been so invariably sustained by the circuits, and so often recognized in the higher courts, both of law and equity, as to put at rest all question of their legality, in the absence of fraud, not only between the immediate parties, but as against creditors and subsequent *bona fide* purchasers. In favor of the latter, the only judicial question has been, whether, if there is no change in the possession of the property, that fact is to be considered as *prima facie* evidence of fraud. That, however, is only a matter of evidence, and does not affect the validity of the instrument if there is no fraud. The possession can always be explained. Assuming our common law rule to be, as held in *Runyon* v. *Groshon*, 1 *Beasley* 87, that an unaccompanying possession is *prima facie* fraudulent, the New York statute, under which this mortgage was made, is at least equally stringent, for it provides that, even after the mortgage is filed in the register's office, the same shall be presumed to be fraudulent and void against subsequent purchasers in good faith, unless accompanied by an immediate delivery and be followed by an actual and continued possession; and shall be conclusive evidence of fraud unless it shall be made to appear, on the part of the person claiming under the mortgage, that the same was made in

good faith, and without any intent to defraud creditors or subsequent purchasers. 3 *N. Y. Rev. Stat.* (*5th ed.*) 222.

There is no reason or policy in our common law, why we should deny to a New York mortgage, free from fraud, the same effect here as it would have there, particularly when guarded by a statute as rigid as that. This conclusion may work a hardship upon our own citizens in cases like this, but under a reverse state of facts it might protect them, if as mortgagees here, their property should be transported to New York to defeat their claims.

But it is said that our act concerning chattel mortgages (*Nix. Dig.* 613) interdicts this mortgage from having any force in this state. That depends entirely upon the construction of the statute. The first section provides that *every mortgage* which shall not be accompanied by an immediate delivery, and followed by an actual and continued change of possession, shall be absolutely void as against creditors of the mortgagor and subsequent purchasers and mortgagees in good faith, unless the mortgage, or a true copy thereof, shall be filed as directed in the succeeding section; but section 2. directs that the instruments mentioned in the preceding section, shall be filed in the clerk's office of the county wherein the mortgagor, if a resident of this state, shall reside at the time of the execution thereof; and if not a resident, then in the clerk's office of the county where the property so mortgaged shall be at the time of the execution of such instrument. The evident purpose of the act is to reach only two cases— one, where the mortgagor resides in the state; and the other, where he does not, and the property is within the state. The legislature, if it were thought good policy, could prevent a foreign mortgage from having effect in this state, but the intention to do so ought to be clearly manifested, when the object is to abridge the validity of a common law contract. The words " every mortgage," in the 1st section, should be limited to the purpose of the act, and hence this mortgage is not within its scope.

This construction carries out the full meaning of the act. It does not comprehend or prohibit mortgages that cannot be filed within this state under one of the two conditions named. The mortgage not being contrary to the policy of our law, the title of Parr, through the mortgage, is good against Brady, notwithstanding Brady may have been a *bona fide* purchaser from the mortgagor.

None of the other reasons urged for a new trial are sufficient, and no written opinion upon them is necessary. The Circuit Court should be advised to discharge the rule.